UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
(CAMDEN VICINAGE)
_____

| | |
|---|---|
| Pedro and Lisette Rodriguez, | : |
| | : |
| Plaintiffs, | : |
| | : CIVIL ACTION NO.: 1:09-cv-05020 |
| | : (RBK/AMD) |
| v. | : |
| | : Jury of Twelve (12) Jurors Demanded |
| | : |
| Officer Tyrone McEady | : |
| Defendant. | : |


**BRIEF IN SUPPORT OF THE PLAINTIFF'S OPPOSITION TO DEFENDANT, TYRONE MCEADY'S MOTION FOR SUMMARY JUDGMENT**


**Respectfully submitted by:**          **WEISBERG LAW, P.C.**
                                         BY:  Matthew B. Weisberg
                                         Graham F. Baird
                                         7 South Morton Ave.
                                         Morton, PA 19070
                                         (610) 690-0801
                                         Fax (610) 690-0880
                                         Attorney for Plaintiff

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| TABLE OF AUTHORITIES | | 3 |
| I. | INTRODUCTION | 5 |
| II. | STATEMENT OF FACTS | 5 |
| III. | LEGAL STANDARD FOR SUMMARY JUDGMENT | 10 |
| IV. | LEGAL ARGUMENT | 11 |
| | A. Plaintiff, Lisette Rodriguez voluntarily withdraws, with prejudice, any loss of consortium claim. | 11 |
| | B. Plaintiff, Pedro Rodriguez voluntarily withdraws, with prejudice, any conspiracy claim as set forth in Count V of Plaintiffs' Complaint. | 11 |
| | C. N.J.S.A. 59:9-2 Does Not Apply to Plaintiff's Claim and the Jury is Entitled to Consider Pain and Suffering Damages Arising Out of McEady's Assault Against Plaintiff. | 11 |
| | D. There is Evidence To Support Plaintiff's Punitive Damages Claim. | 12 |
| | E. Defendant McEady is Not Entitled To Qualified Immunity. | 13 |
| V. | CONCLUSION | 15 |

## **TABLE OF AUTHORITIES**

**CASES**

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242, 248 (1986)                                              10

Berner Int'l Corp. v. Mars Sales Co.,
    987 F.2d 975, 978 (3d Cir. 1993)                                      10

Carswell v. Borough of Homestead,
    381 F.3d 235 (3d Cir. 2004)                                           14

Celotex Corp. v. Catrett,
    477 U.S. 317, 322 (1986).                                             10

Coleman v. Kaye,
    87 F.2d 1491 (3$^d$ Cir. 1989)                                        12

Couden v. Duffy,
    446 F.3d 483 (3d Cir. 2006)                                           14

Curley v. Klem,
    499 F.3d 199 (3d Cir. 2007)                                           13

Graham v. Connor,
    490 U.S. 386 (1989)                                                   14

Harlow v. Fitzgerald,
    457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).                  13

Hunter v. Bryant,
    502 U.S. 224, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991)              13

Kelly v. County of Monmouth, 380 N.J.Super. 552, (App. Div. 2005)         11

Savares v. Agriss,
    883 F.2d 1194 (3d Cir. 1989)                                          12

Smith v. Wade,
    461 U.S. 30 (1983)                                                    12

**RULES & STATUTES**

| | |
|---|---|
| Federal Rule of Civil Procedure 56(c) | 9 |
| 42 U.S.C. § 1983 | 10 |
| N.J.S.A. § 59:3-3 | 11, 12 |
| N.J.S.A. § 59:3-14 | 11 |
| N.J.S.A. § 59:9-2 | 11 |

**I.     INTRODUCTION**

Plaintiffs, Pedro and Lisette Rodriguez hereby oppose the Motion for Summary Judgment filed in this matter by Defendant, Tyrone McEady ("McEady"). There are material issues of fact concerning whether Tyrone McEady violated Plaintiff's well established 4th Amendment right to be free from unreasonable seizure and excessive force. In order to streamline the case and in light of the facts surrounding the claims, Plaintiff withdraws, with prejudice, certain claims asserted in Plaintiff's complaint.

However, there is evidence for each element of the Plaintiff's 42 U.S.C. § 1983 claim against Officer McEady and McEady is not entitled to qualified immunity in this case.

**II.    FACTS GIVING RISE TO PLAINTIFF'S CLAIMS.**

    **A. PLAINTIFF'S RESPONSE IN OPPSITION TO THE DEFENDANT'S STATEMENT OF FACTS**

1.     Denied as stated. Defendant is named Tyrone McEady, not Carlos McEady. It is admitted that Defendant Tyrone McEady is a police officer employed by the City of Camden.

2-4.   Admitted.

5.     Denied as stated. It is denied that McEady "challenged" Plaintiff's action. On April 9, 2008, McEady, who was not in uniform and did not initially display a badge, approached Plaintiff with an angry and hostile demeanor after Plaintiff had attempted to move cones near 7th and Van Hook, in Camden, New Jersey so he could drive his lunch truck to the job site, as Plaintiff had done many times before. Defendant McEady immediately asked Plaintiff "what the fuck are you doing? Why are you moving them cones," which started an argument between the Plaintiff and Defendant McEady. It escalated to the point where McEady threatened Plaintiff, telling him "fuck you, I'll throw you in jail," and McEady took a swing at Plaintiff attempting to

hit him. McEady pushed and shoved Plaintiff, handcuffed him, and threw him in the police car." McEady spit in Plaintiff's face and threatened Plaintiff that he was going to "fuck [Plaintiff] up." (Exh. A.; Deposition Transcript of Pedro Rodriguez, pp. 18-20.)

6. Admitted. By way of further answer, please see Plaintiff's response to Defendant's statement of facts, no. 5, as set forth above.

7. Denied as stated. The averment set forth herein is a conclusion of law to which no response is required. It is specifically denied that any conduct by the Plaintiff caused McEady to issue Plaintiff summonses. The summonses were meritless and were issued to Plaitniff without any objectively reasonable basis.

8. Admitted. Plaintiff is withdrawing, with prejudice, the conspiracy claim.

9. Admitted.

10. Denied. On April 9, 2008, McEady, who was not in uniform and did not initially display a badge, approached Plaintiff with an angry and hostile demeanor after Plaintiff had attempted to move cones near 7th and Van Hook, in Camden, New Jersey so he could drive his lunch truck to the job site, as Plaintiff had done many times before. Defendant McEady immediately asked Plaintiff "what the fuck are you doing? Why are you moving them cones," which started an argument between the Plaintiff and Defendant McEady. It escalated to the point where McEady threatened Plaintiff, telling him "fuck you, I'll throw you in jail," and McEady took a swing at Plaintiff attempting to hit him. McEady pushed and shoved Plaintiff, handcuffed him, and threw him in the police car." McEady spit in Plaintiff's face and threatened Plaintiff that he was going to "fuck [Plaintiff] up." (Exh. A.; Deposition Transcript of Pedro Rodriguez, pp. 18-20.)

11. Admitted in part; denied in part. It is admitted that Plaintiff and Defendant never had any other contact or communications after the date of the incident. A full and complete summary as to the Plaintiff and Defendant's altercation on the date of the incident is set forth in Plaintiff's deposition transcript, at pp. 18-22.

12. Denied. Plaintiff sustained injuries from his unlawful detention, the issuance of the summonses as well as injuries arising out of the assault and battery perpetrated by Defendant McEady.

### B. PLAINTIFF'S STATEMENT OF FACTS.

1. For approximately two (2) years prior to the incident, Plaintiff, Pedro Rodriguez ("Rodriguez"), operated a lunch truck at the construction site located at 7th Street and Van Hook Street in Camden, New Jersey. (Complaint ¶ 5.)

2. On or about April 8, 2009, Rodriguez was setting up his lunch truck as usual and while setting up he was approached by McEady who was working a side job at a construction site located nearby. (Exh. A., p. 18.)

3. At the time McEady approached Plaintiff, McEady was dressed in plain clothes, driving an unmarked vehicle, had no visible signs that he was a police officer, and did not identify himself as a police officer. (Exh. A., pp. 17-20).

4. When McEady first approached Plaintiff, Plaintiff did not know that McEady was a police officer. (Exh. A., p. 22.)

5. McEady, who was not in uniform and did not initially display a badge, approached Plaintiff with an angry and hostile demeanor after Plaintiff had attempted to move cones near 7th and Van Hook, in Camden, New Jersey so he could drive his lunch truck to the job site, as Plaintiff had done many times before. Defendant McEady immediately asked Plaintiff

"what the fuck are you doing? Why are you moving them cones," which started an argument between the Plaintiff and Defendant McEady. It escalated to the point where McEady threatened Plaintiff, telling him "fuck you, I'll throw you in jail," and McEady took a swing at Plaintiff attempting to hit him. McEady pushed and shoved Plaintiff, handcuffed him, and threw him in the police car." McEady spit in Plaintiff's face and threatened Plaintiff that he was going to "fuck [Plaintiff] up." (Exh. A.; Deposition Transcript of Pedro Rodriguez, pp. 18-20.)

6. Plaintiff questioned McEady's authority to order Plaintiff to move. (Exh. A., p. 19.)

7. Plaintiff and McEady then got into a verbal argument. (Defendant's statement of facts, no. 6.)

8. McEady escalated the argument by getting in Plaintiff's face, cursing Plaintiff and spitting on Plaintiff. (Exh. A., p. 19.)

9. McEady then began to push Plaintiff and attempted to take a swing at Plaintiff. (Id.)

10. At or about this point, Plaintiff attempted to get back into his lunch truck and McEady walked back to his vehicle and put on a vest that contained a police badge. (Id.)

11. Prior to McEady putting the vest on, Plaintiff did not know that McEady was a police officer.

12. McEady then handcuffed Plaintiff and put Plaintiff into McEady's car. (Id.)

13. McEady eventually unhandcuffed Plaintiff and allowed Plaintiff to leave. (Id.)

14. At one point during the altercation, one of the other officers on the scene looked at Defendant, McEady with a look, "like, don't hit [Plaintiff]." (Exh. A, p. 20.)

8

15. Prior to allowing Plaintiff to leave, McEady issued four (4) citations to Plaintiff, which included failure to obey an officer (N.J. Stat. 39:4-80); refusal to move (N.J. Stat. 2C:33-7(b)); inappropriate behavior (N.J. Stat. 2C:33-2(a)(2)); and unlawful removal of a sign (N.J. Stat. 39:4-2(a)). (Exh. B; citations).

16. Plaintiff was later told by court staff at Camden City Municipal Court that the charge of "unlawful removal of a sign" was fabricated by McEady. (Complaint ¶ 27).

17. Plaintiff filed a complaint with internal affairs. (Exh. C).

18. On or about August 27, 2009, Plaintiff was notified that the Internal Affairs Unit had found Plaintiff's complaint had been "Sustained" and that appropriate measures would be taken to ensure that there will not be a repeat of Officer McEady's behavior, although Plaintiff was not informed of what, if any, measures were taken. (Exh. D).

19. McEady was never disciplined as a result of the altercation with Plaintiff. (Exh. E, Deposition Transcript of McEady, p. 33).

20. To defend himself against McEady's baseless and frivolous citations, Plaintiff hired an attorney, Jeffrey Pooner, Esquire.

21. On or about July 27, 2009, Plaintiff attended a hearing at the Camden City Municipal Court for the above citations, where all charges against Plaintiff were dropped.

22. Plaintiff testified that he experienced mental anguish and humiliation as a result of the assault, and because of the manner in which Defendant McEady disrespected him. (Exh. A, p. 34.)

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "there is no genuine issue as to any material fact and…the moving party is entitled to a judgment as a matter of law." An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). In <u>Anderson</u>, the Court explained that the Judge's role when adjudicating a Motion for Summary Judgment "is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Id</u>. at 249. In making this determination, a Court is to draw all reasonable inferences in favor of the non-moving party. See <u>Berner Int'l Corp. v. Mars Sales Co.</u>, 987 F.2d 975, 978 (3d Cir. 1993). In other words, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

IV.   **LEGAL ARGUMENT**

**A.  Plaintiff, Lisette Rodriguez voluntarily withdraws, with prejudice, any loss of consortium claim.**

**B.  Plaintiff, Pedro Rodriguez voluntarily withdraws, with prejudice, any conspiracy claim as set forth in Count V of Plaintiffs' Complaint.**

**C. N.J.S.A. 59:9-2 Does Not Apply to Plaintiff's Claim and the Jury is Entitled to Consider Pain and Suffering Damages Arising Out of McEady's Assault Against Plaintiff.**

Defendant wrongly asserts that under the provisions of the New Jersey Tort Claims Act, Plaintiff cannot recover damages for pain and suffering because he has not suffered a permanent injury.

Section 59:9-2 states:

> No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $ 3,600.00.

N.J. Stat. Ann. § 59:9-2(d).

Section 59:3-14 provides an exception to public employee immunity. The section states that when a public employee's conduct is "outside the scope of his employment or constitute[s] a crime, actual fraud, actual malice or willful misconduct," then nothing in the New Jersey Tort Claims Act shall "exonerate [that] public employee from liability" or "from the full measure of recovery applicable to a person in the private sector."  N.J. Stat. Ann. § 59:3-14.

If Plaintiff's allegations are found to be true, then Defendant, McEady clearly acted willfully and with actual malice towards the Plaintiff, and N.J.S.A. § 59:9-2(d)'s requirement of a permanent injury would be of no consequence.  See <u>Kelly v. County of Monmouth</u>, 380 N.J.Super. 552, 562, 883 A.2d 411 (App. Div. 2005) (concluding that "in circumstances in which

11

[a] public employee acts willfully or beyond the scope of his employment, [§ 59:9-2(d)'s] verbal threshold must not be applied"). Therefore, since a jury could conclude that Defendant McEady acted willfully or with actual malice, in attempting to hit Plaintiff and spitting in Plaintiff's face, N.J.S.A. § 59:9-2(d) does not bar Plaintiff from recovering damages for pain and suffering damages and Defendants' motion for summary judgment in reliance on § 59:9-2(d) must be denied.

### E. There is Evidence To Support Plaintiff's Punitive Damages Claim.

Punitive damages are recoverable for claims under 42 U.S.C. § 1983 when defendant's conduct is shown to be motivated by evil motive or intent, or when it involve reckless or callous indifference to the federally protected rights of others. Smith v. Wade, 461 U.S. 30 (1983); Coleman v. Kaye, 87 F.2d 1491, 1509 (3d Cir. 1986).

Punitive damages are not awarded as compensation for injury; they are awarded for the dual purpose of punishing the wrongdoer and deterring future violations. In a § 1983 action, a jury may award punitive damages when a "defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). Thus, for a § 1983 plaintiff to qualify for a punitive damages award, a "defendant's conduct must be, at a minimum, reckless or callous"-it is not essential that the defendant's action meet the higher standard of an intentional or evil motive. Savarese v. Agriss, 883 F.2d 1194, 1204 (3d Cir.1989).

Plaintiff very clearly testified that Defendant McEady attempted to take a swing at him, and spit in his face. (Exh. A., pp. 18-22.) Further, it is undisputed that the Plaintiff and Defendant McEady were involved in a heated verbal altercation and were both yelling and

12

cursing at each other. Defendant McEady handcuffed Plaintiff and shoved him into a police car. Plaintiff testified that one of the other officers who arrived on the scene after the altercation had already occurred looked at Defendant McEady as if to signal him, "not to hit [Plaintiff]." There is ample evidence to support a jury verdict that Defendant McEady acted willfully, with malice and with a reckless disregard for the Plaintiff's rights.

### E. Defendant McEady is Not Entitled To Qualified Immunity.

In recognition of the complex task performed by law enforcement officials, the Supreme Court has held that officers are entitled to qualified immunity from civil liability under 42 U.S.C. § 1983. See Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In Harlow, the Court stated that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818, 102 S.Ct. at 2738. The Supreme Court's decisions place a special emphasis on the reasonableness of an officer's actions, requiring courts to make an objective inquiry into the facts facing the officer at the time of the alleged improper act. See Harlow, 457 U.S. at 815-19, 102 S.Ct. at 2736-39. The objective nature of the inquiry is designed both to limit exhaustive inquiries into an individual officer's subjective state of mind, id. at 816-17, 107 S.Ct. at 3034-38, and to safeguard the general interests of law enforcement from the intrusions of extended litigation, see Hunter v. Bryant, 502 U.S. 224, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991).

As an accommodation of competing values, qualified immunity strikes a balance by permitting a plaintiff to recover for constitutional violations where the defendant officer was plainly incompetent or knowingly violated the law, while immunizing an officer who made a reasonable mistake about the legal constraints on his actions. Curley v. Klem, 499 F.3d 199,

206-07 (3d Cir.2007). The analysis begins with the threshold qualified immunity question to determine whether a jury could find that Plaintiff was deprived of a constitutional right. The Fourth Amendment prohibits the use of excessive force by a law enforcement officer. Carswell v. Borough of Homestead, 381 F.3d 235, 240 (3d Cir. 2004) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)).

>   As the Court of Appeals has explained:
>
>> In deciding whether challenged conduct constitutes excessive force, a court must determine the objective reasonableness of the challenged conduct, considering the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. Other factors include the duration of the officer's action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.

Couden v. Duffy, 446 F.3d 483, 496-97 (3d Cir.2006) (internal quotations and citations omitted). Moreover, the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation. Graham, 490 U.S. at 396-97.

Applying these considerations to the facts present in this case, and viewing the evidence in the light most favorable to Plaintiff, the Court must find that a reasonable fact-finder could conclude that Defendant McEady used excessive force against Plaintiff and thereby violated his

Fourth Amendment rights. There are two very divergent accounts of what happened on the date of the incident. Plaintiff testified that McEady took a swing at him, spit in his face, pushed and shoved him, handcuffed him and threw him into a police car. McEady denies this incident occurred, though he admits that he was screaming, yelling and cursing Plaintiff, because Plaintiff was trying to drive his lunchtruck toward the construction site to feed the workers. If the jury believes the testimony of Plaintiff over that of McEady, Plaintiff will prevail on his 4th Amendment claim for excessive force. Defendant is not entitled to any qualified immunity here.

## V. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests the Court deny the Motion for Summary Judgment filed by Defendants in this matter and permit this case to proceed to trial.

                WEISBERG LAW, P.C.

                /s/ Matthew B. Weisberg
                Matthew B. Weisberg, Esquire
                Graham F. Baird, Esquire
                Attorneys for Plaintiff