NOT FOR PUBLICATION                                                                (Doc. No. 20)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____
                                            :
PEDRO RODRIGUEZ and                         :
LISETTE RODRIGUEZ,                          :
                                            :
                Plaintiffs,                 :        Civil No. 09-5020 (RBK/AMD)
                                            :
        v.                                  :        **OPINION**
                                            :
TYRONE MCEADY,                              :
                                            :
                Defendant.                  :
_____ :

**KUGLER**, United States District Judge:

This matter arises out of Plaintiff Pedro Rodriguez's ("Plaintiff") 2009 arrest for "disorderly persons." Plaintiff brought this § 1983 suit alleging that Defendant Tyrone McEady ("Defendant") violated his Fourth Amendment rights by using excessive force to arrest him. Defendant moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. Defendant claims the following: (1) Defendant is entitled to qualified immunity; and (2) because Plaintiff has failed to meet the tort threshold of the New Jersey Tort Claims Act (NJTCA), N.J. Stat. Ann. § 59:1-1 et seq., Plaintiff is unable to claim damages for pain and suffering; and (3) Plaintiff has failed to establish evidence sufficient to satisfy the threshold for punitive damages under 42 U.S.C. § 1983. For the following reasons, Defendant's motion for summary judgment is **DENIED**.

I.    BACKGROUND

Plaintiff is a lunch truck operator who routinely operates his lunch truck at a construction site located at 7th Street and Van Hook Street in Camden, NJ.  Compl. ¶ 5.  On April 9, 2008, Plaintiff was stopped by Defendant while Plaintiff was setting up his lunch truck near the construction site. Pl. Ex. A., p. 18.   At the time Defendant stopped Plaintiff, Defendant was dressed in plain clothes, driving an unmarked vehicle, and did not identify himself as a police officer.  Id. at 17-20.  Plaintiff alleges that Defendant approached him "with an angry and hostile demeanor" after Plaintiff had attempted to move yellow construction cones at the entrance to the construction site.  Id. at 18-20.  Plaintiff and Defendant then got into a verbal argument, during which Plaintiff alleges that Defendant "grab[bed]," "pushe[d]," "handcuff[ed]," and "th[rew Plaintiff] in[to] the cop car."  Id. at 19.  Plaintiff states that, while Plaintiff was sitting in the police car, Defendant "wanted to hit [Plaintiff] so bad that [Defendant's] face [was] between [Plaintiff's] face," that Defendant "threatened to f-ck [Plaintiff] up," and that during this time Defendant was "spitting in [Plaintiff's] face, inches . . . away from [Plaintiff's] face the whole time."  Id.

When Plaintiff was secured in the police car, Defendant issued four tickets to Plaintiff for the following charges: "failure to obey an officer (N.J. Stat. 39:4-80); refusal to move (N.J. Stat. 2C:33-7(b)); inappropriate behavior (N.J. Stat. 2C:33-2(a)(2)); and unlawful removal of a sign (N.J. Stat. 39:4-2(a))."  Compl. ¶ 26.  According to Plaintiff, Defendant then "took the handcuffs off . . . and told [Plaintiff] to go home with four tickets."  Pl. Ex. A., p. 20.  Plaintiff alleges that the entire incident from the time Defendant initially approached Plaintiff took place within a span of "about at least 20 minutes [to] half [an] hour."  Id.  Subsequent to the incident, Plaintiff's four citations were dismissed by the municipal court.  Compl. ¶¶ 33-34.

Defendant denies Plaintiff's allegations.  Defendant claims that Plaintiff resisted Defendant's orders to stop moving the cones and to leave the construction site.  Def.'s Ex. B., p. 21-24.  Defendant also claims that Plaintiff escalated the argument by beginning to curse at Defendant and shouting, "you want to hit me, don't you; you want to hit me, don't you?"  Id. at 24.  Defendant also claims that Defendant had no conversations with Plaintiff while Plaintiff was in the police car.  Id. at 28.

On September 30, 2009, Plaintiff filed the Complaint, alleging that Defendant's actions violated his First, Fourth and Fourteenth Amendments rights.  Compl. ¶¶ 41-42.  Defendant timely answered and timely moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.

**II.   STANDARD**

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine issue of material fact exists only if the evidence is such that a reasonable jury could find for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996).  The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S.

at 325.

Once the moving party satisfies this initial burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" Corliss v. Varner, 247 F. App'x 353, 354 (3d Cir. 2007) (quoting Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the factfinder, not the district court. BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. DISCUSSION

#### A. Qualified Immunity

Qualified immunity protects officers from liability when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from

4

liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id.  The Third Circuit uses a two-step inquiry to determine whether a government official is entitled to qualified immunity in connection with the arrest of a private citizen.  Pollock v. The City of Phila., 403 Fed. Appx. 664, 669 (3d Cir. 2010) (citing Pearson v. Callahan, 555 U.S. 223 (2009)).  First, a court must "decide whether the facts . . . shown . . . make out a violation of a constitutional right."  Id. (quoting Pearson, 555 U.S. at 815-16).  Second, the court must "decide whether the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct."  Id. (quoting Pearson, 555 U.S. at 816) (internal quotation marks omitted).  "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  Id. (quoting Pearson, 555 U.S. at 816) (internal quotation marks omitted).  Qualified immunity is an affirmative defense and the burden of pleading it rests with the defendant.  Gomez v. Toledo, 446 U.S. 635, 639 (1980).

### 1. Violation of a Constitutional Right

On September 30, 2009, Plaintiff filed the Complaint, alleging that Defendant's actions "violated his First, Fourth and Fourteenth Amendments rights."  Compl. ¶¶ 41-42.  Plaintiff has not explained, nor has he alleged any facts that explain, how Defendant's conduct violates Plaintiff's First Amendment rights.  Therefore, this opinion focuses on Defendant's alleged violation of Plaintiff's Fourth Amendment rights, as applied to the states through the Fourteenth Amendment.

The Fourth Amendment prohibits police officers from using excessive force to arrest a suspect.  Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999).  To prove a Fourth Amendment

5

excessive force claim, a plaintiff must show that (1) a seizure occurred and (2) the seizure was unreasonable.  Id.  Here, there is no dispute that Defendant seized Plaintiff.  In determining whether the seizure was reasonable, the Court must apply the "perspective of a reasonable officer on the scene[.]"  Graham, 490 U.S. at 396.  As the Third Circuit explained in Couden v. Duffy, 446 F.3d 483 (3d Cir. 2006), the district court must:

> determine the objective reasonableness of the challenged conduct, considering the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, . . . whether he is actively resisting arrest or attempting to evade arrest by flight[,] . . . the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.

Id. at 496-97 (citations omitted) (internal quotation marks omitted).  Serious physical injury is not a necessary prerequisite to an excessive force claim.  Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997).  Beating a suspect after the suspect is subdued may constitute excessive force. Barker v. Keezer, No. 08-1487, 2010 U.S. Dist. LEXIS 68995, at *8-9 (D.N.J. July 8, 2010) ("Barker claims that . . . Detective Keezer beat him about the head and body and repeatedly slammed his head into the pavement after he had already been handcuffed . . . and was lying on the ground. . . .  Therefore, a fact-finder, accepting Barker's version of the events as true, could conclude that Detective Keezer used excessive force in effectuating Barker's arrest and violated Barker's Fourth Amendment rights."); Hurt v. City of Atlantic City, No. 08-3053, 2010 U.S. Dist. LEXIS 16383, at *25-27 (D.N.J. Feb. 24, 2010) ("[I]t is for the jury to determine whether Officer Timek and Officer Warner physically assaulted Plaintiff after he was handcuffed and subdued on the ground.  Because resolution of these issues implicates 'disputes over facts that might affect

6

the outcome of the suit under the governing law,' summary judgment is not appropriate . . . ." (citations omitted)).

Viewing the facts alleged in the light most favorable to Plaintiff, a reasonable jury could conclude that Defendant used excessive force in violation of the Fourth Amendment by "pushing" Plaintiff into the police car and "spitting on" Plaintiff after he was subdued and handcuffed. Compl. ¶¶ 19-20; Pl. Ex. A. at 19.[1] To support those allegations, Plaintiff relies on his own testimony. Therefore, if the jury accepts Plaintiff's version of the events, it may find that Defendant used excessive force when they arrested Plaintiff.

Plaintiff claims that Defendant used excessive force by handcuffing him and pushing him into the police car. Claims that police officers used excessive force in an arrest are analyzed under the Fourth Amendment objective reasonableness standard. Graham v. Connor, 490 U.S. 386, 388 (1989). Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Id. (internal citation omitted). In assessing whether the use of force was objectively reasonable, courts consider "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. Courts may also consider the following factors:

> the possibility that the persons subject to the police action are violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.

---

[1] In evaluating qualified immunity on a motion for summary judgment, courts usually take allegations in the light most favorable to the plaintiff by "adopting . . . the plaintiff's version of the facts." Scott v. Harris, 550 U.S. 372, 378, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).

7

Kopec v. Tate, 361 F.3d 772, 777 (3d Cir. 2004).  While reasonableness is often a question for the jury, summary judgment in favor of defendant is appropriate "if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances."  Id. (quoting Abraham v. Raso, 183 F.3d 279, 290 (3d Cir. 1999)).

Here, Plaintiff admits that he neither sought medical attention nor sustained any physical injuries as a result of Defendant's conduct.  Deposition of Plaintiff at 34, 58.  However, Plaintiff argues that, based on the totality of the circumstances, Defendant used excessive force to arrest Plaintiff by spitting in Plaintiff's face, threatening Plaintiff, pushing Plaintiff, handcuffing Plaintiff and throwing Plaintiff into the police car, when the alleged offense by Plaintiff was failure to obey Defendant's instructions to leave the construction site.  This evidence is sufficient to raise an issue of fact as to the reasonableness of the force used.

In sum, because the court finds sufficient evidence to create an issue of fact as to whether the force used was reasonable, the court will deny Defendant's motion for summary judgment as to the excessive force claim.

### 2. Clearly Established Right

Having determined that a reasonable jury could conclude that Defendant violated Plaintiff's constitutional rights, the Court must determined whether those rights were clearly established at the time Defendant engaged in the allegedly unconstitutional conduct.  The inquiry into whether a constitutional right is clearly established "must be undertaken in light of the specific context of the case[.]"  Saucier, 533 U.S. at 201.  A right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. at 202.  The Court must assess whether the right was clearly established at the

time the officer acted.  Anderson v. Creighton, 483 U.S. 635, 639 (1987).  The Court should not grant summary judgment on the basis of qualified immunity when disputed issues of historic fact are "material to the objective reasonableness of an officer's conduct[.]"  Curley v. Klem, 298 F.3d 271, 278 (3d Cir. 2002).  Material issues of disputed, historical fact "give rise to a jury issue."  Id.

Defendant arrested Plaintiff in 2009.  Def's. Br. 1.  In 2009, it was well established that intentionally striking a subdued arrestee was a constitutional violation.  See Hurt, 2010 U.S. Dist. LEXIS 16383, at *28 (finding that defendants violated a clearly established right during plaintiff's 2006 arrest by punching and kicking plaintiff while he was handcuffed); Barker, 2010 U.S. Dist. LEXIS 68995, at *10 (finding that defendants violated a clearly established right during plaintiff's 2006 arrest by beating plaintiff's head and body while he was restrained).  Plaintiff states, and Defendant does not contest, that Plaintiff had never attacked Defendant or physically resisted arrest.  Plaintiff further alleges that Defendant "pushed" and "threw" Plaintiff into the police car after Defendant had already subdued and handcuffed Plaintiff.  Defendant has not established that the alleged pushing and throwing was qualified or mitigated.  Therefore, a reasonable juror could find that the alleged pushing and throwing of Plaintiff by Defendant, after Defendant had secured Plaintiff with handcuffs, rose to the level of intentionally striking a subdued arrestee.  Accordingly, it is inappropriate for the Court to grant Defendant summary judgment at this juncture.

**B. Punitive Damages under § 1983 & Punitive Damages under State and Federal Law**

Defendant also moves for summary judgment as to Plaintiff's claim for punitive damages under § 1983.  See Def.'s Br. at 12-13.  Defendant further argues that Plaintiff has failed to

9

produce evidence showing that Defendant's actions were reckless or involved a callous indifference to a federally protected right, or that Defendant's actions were wantonly reckless or malicious.  See Def.'s Br. at 13.  Plaintiff argues that a jury could determine that on the basis of Defendant's actions in each incident in this dispute, Defendant was motivated by malicious intent.  See Pl. Br. at 12-13.  The Court agrees with Plaintiff and finds disputed issues of material fact for trial.

The Third Circuit has held that "for a plaintiff in a section 1983 case to qualify for a punitive award, the defendant's conduct must be, at a minimum, reckless or callous.  Punitive damages might also be allowed if the conduct is intentional or motivated by evil motive, but the defendant's action need not necessarily meet this higher standard."  Savarese v. Agriss, 883 F.2d 1194, 1204 (3d Cir. 1989).  Likewise under New Jersey law, "[t]o warrant a punitive award, the defendant's conduct must have been wantonly reckless or malicious.  There must be an intentional wrongdoing in the sense of an 'evil-minded act' or an act accompanied by a wanton and willful disregard of the rights of another."  Nappe v. Anschelewitz, Barr, Ansell & Bonello, 477 A.2d 1224, 1230 (N.J. 1984).  The punitive damages inquiry requires consideration of the defendant's subjective intent, which is a "poor subject" for summary judgment.  Green v. Corzine, No. 09-1600, 2010 WL 1133445, at *7 (D.N.J. Mar. 22, 2010).

Here, Plaintiff persuasively points out that a reasonable juror could conclude that the manner of police interactions in this case could give rise to an inference of the requisite state of mind.  See Pl. Br. at 12-13.  For example, during the incident at issue in this case, Plaintiff claims that Defendant was yelling and cursing at Plaintiff, spitting on Plaintiff, threatening bodily harm to Plaintiff, and that Defendant finally "handcuffed Plaintiff and shoved him into a police car."  Id.  The Court finds that on the facts alleged and in dispute, a reasonable juror could

find that Defendant's actions were motivated by reckless or callous indifference to Plaintiff's rights. Therefore, the Court denies Defendant's Motion as to the punitive damages claims.

### C. New Jersey Tort Claims Act Tort Threshold

Defendant last moves for summary judgment on any claims in the Complaint under New Jersey common law because Plaintiffs have failed to meet the tort threshold of the New Jersey Tort Claims Act (NJTCA), N.J. Stat. Ann. § 59:1-1 et seq. Specifically, Defendant argues that Plaintiff failed to establish that he incurred medical treatment expenses in excess of $3,600.00 as required by N.J.S.A. 59:9-2. However, Plaintiff notes that § 59:3-14 provides an exception to public employee immunity where a public employee's conduct is "outside the scope of his employment or constitute[s] a crime, actual fraud, actual malice or willful misconduct." Id. § 59:3-14; see Taglieri v. Moss, 842 A.2d 280 (N.J. Super. Ct. App. Div. 2004) ("The Legislature's intent . . . is evidenced in the 1972 Task Force Comment to *N.J.S.A.* 59:3-14: 'It is the intent of this provision that a public employee guilty of outrageous conduct cannot avail himself of the limitations as to liability *and damages* contained in this act."). As discussed above, a reasonable juror could conclude that Defendant McEady acted willfully or with actual malice in threatening bodily harm to Plaintiff, pushing and throwing Plaintiff, and spitting in Plaintiff's face. Therefore, N.J.S.A. § 59:9-2(d) does not bar Plaintiff from recovering damages for pain and suffering.[2]

---

[2] The Court further notes that N.J.S.A. § 59:9-2(d) does not bar pain and suffering damages as to Plaintiff's constitutional and civil rights claims. See McGuire v. Twp. of Waterford, No. L-7502-05, 2007 WL 598666, at *6 (N.J. Super. Ct. App. Div. Feb. 28, 2007) (holding that the NJTCA does not apply to constitutional violations or civil rights violations).

## IV. CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is **DENIED**.

An appropriate Order shall enter today.

Date: 10/28/11  /s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge